IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**UNITED STATES OF AMERICA**                                                 **PLAINTIFF**

**V.**                            **CASE NO. 5:17-CR-50010**

**JONATHAN E. WOODS;**
**OREN PARIS III; and**
**RANDELL G. SHELTON, JR.**                                      **DEFENDANTS**

**OPINION AND ORDER**

Currently before the Court are:

- The Expedited Joint Motion to Compel Discovery (Doc. 91) filed by Defendants Jonathan Woods, Oren Paris, and Randell Shelton; the Government's Response (Doc. 103) and Supplemental Response (Doc. 113); and Mr. Shelton's Reply (Doc. 116);

- Mr. Shelton's Motion to Compel Production of Unredacted Discovery Materials (Doc. 129); and the Government's Response (Doc. 134); and

- Mr. Shelton's Motion for a Bill of Particulars (Doc. 101); the Government's Response (Doc. 110); and Mr. Shelton's Reply (Doc. 117).

For the reasons given below, all three of these Motions are **DENIED**.

**I. JOINT MOTION TO COMPEL (Doc. 91)**

On March 28, 2017, all three Defendants were arraigned on the original Indictment in this case. At their arraignments, all three Defendants requested discovery from the Government under Fed. R. Crim. P. 16. *See* Docs. 15, 19, 23. Within a week, the Government made its initial production of discovery to the Defendants, *see* Doc. 91, p. 3.

1

Since then, the Government has made additional discovery productions, but the one that is the subject of this Motion is an August 4 production "of nearly 4.3 million files" of electronically stored information ("ESI") on an external hard drive. *See id.* at 2. The Defendants contend that the hard drive is "nothing more than an inoperable paper weight" because its extremely voluminous contents are not electronically searchable without purchasing "prohibitively expensive" litigation software. *See id.* at 4–6. The Government's Response points out, first, that this litigation software and accompanying instruction manual would cost about $1,400.00 total to purchase. *See* Doc. 103, p. 4 n.4. Then the Government proposes several alternative free solutions to the Defendants' search problems, but Mr. Shelton's subsequent Reply indicates that these alternative proposals did not work for his attorneys when they attempted to implement them.

The Government's Supplemental Response further informs the Court that to the extent the August 4 hard drive "contained records and documents not provided separately in the initial and supplemental discovery productions, the Government will not offer such records and documents in evidence and will rely solely on the records and documents produced separately . . . ." (Doc. 113, ¶ 1). The Government contends that "the productions it has made separate from the one terabyte hard drive fully satisfy the Government's discovery obligations in this case." *Id.* Mr. Shelton's counsel expresses frustration over this development, arguing that the Government has "sent defense counsel on a fool's errand, requiring them to spend dozens of hours in futile attempts to review unreviewable files," and that this "demonstrates nothing short of bad faith" on the part of the Government. *See* Doc. 116, pp. 2–3. Accordingly, Mr. Shelton's counsel asks the

Court to "exclude all evidence that was not produced prior to August 4," other than "any required *Brady* material or exculpatory and impeachment evidence." *See id.* at 6–7.

Defense counsel's frustration over wasted time is understandable, but the Court does not believe these facts support a finding of bad faith. Rather, in essence, it would appear to the Court that the Government attempted to provide defense counsel with a separate, additional production of materials that, while relevant, it was not even required to produce under the Federal Rules or this Court's orders. And although defense counsel contends that dozens of hours were wasted in their failed attempts at availing themselves of the Government's generosity, the Court does not see how that is any more the fault of the Government than of the Defendants or their counsel—who, after all, decided to devote "dozens of hours" to in-house computer troubleshooting by attorneys instead of simply paying $1,400.00 for software that would presumably have obviated the need for such efforts.[1]

To be clear, given the Government's representations, the Court does *not* believe that the August 4 hard-drive production would be independently sufficient to satisfy any of the Government's discovery obligations in this case. But the Court is not going to sanction the Government for giving (or trying to give) the Defendants more than they are

---

[1] The Court obviously does not know anything about the fee arrangements between the Defendants in this case and the attorneys they have retained to represent them. But it is interesting to note that when counsel from the CJA panel is appointed to represent an indigent criminal defendant, such CJA counsel may seek reimbursement from this Court for his or her representation at the rate of $132.00 per hour. *See* http://www.arwd.uscourts.gov/sites/arwd/files/CJA-rates.pdf. Of course, there has been no finding that the Defendants in this case are indigent, and their attorneys have been privately retained. But it would seem to this Court that however "prohibitively expensive" a one-time cost of $1,400.00 is for these Defendants, "dozens of hours" of work on computer problems by their attorneys would likely be several times more so.

entitled to, so long as the Government produces the information to which the Defendants *are* entitled in a manner that is compliant with its legal obligations and reasonable under the circumstances. Accordingly, the Defendants' Joint Motion to Compel will be **DENIED**.

## II. MR. SHELTON'S MOTION TO COMPEL (Doc. 129)

On October 12, *see* Doc. 129-1, p. 4, the Government provided the Defendants with text messages that had previously been exchanged between an FBI agent in this case and the lawyer for an informant who is not a party to this case, *see* Doc. 129, ¶ 9; Doc. 134, ¶ 3. The text messages were provided as "potential *Jencks* material or possible impeachment material." *See* Doc. 129-1, p. 4. Portions of those text messages were redacted. Mr. Shelton has filed a Motion asking this Court to "enter an order compelling the government to produce without further delay the full and complete set of unredacted text messages . . . from February 1, 2016, to present." (Doc. 129, p. 5). The Government opposes this Motion, contending that "[t]he redacted messages are not relevant to this case, and are neither *Jencks* nor *Giglio* materials." (Doc. 134, ¶ 9).

With respect to timeliness, the Court disagrees with Mr. Shelton's characterization of this production as "late," *see* Doc. 129, ¶ 12, or "delay[ed]," *see id.* at p. 5, given that the Scheduling Order in this case requires production of *Jencks* material "by not later than immediately after the witness has testified on direct examination" at trial, and production of *Giglio* material "by not later than immediately prior to the testimony [at trial] of the witness to whom such material relates." *See* Doc. 59, p. 3. Given that the trial of this matter is currently set to begin no earlier than December 4, *see* Doc. 58, p. 1, it would appear to the Court that the Government made these disclosures roughly two months earlier than it was required to do so. This is not improper; it is *commendable*, and it is

consistent with the Scheduling Order's statement that "[t]he Court encourages the early disclosure of" such materials "in order to avoid any unnecessary delay in the trial of this case." *See* Doc. 59, p. 3.

With respect to completeness, Mr. Shelton has not offered any basis for why the Court should conclude that he is entitled to the redacted materials. He refers to the Protective Order in this case, but that Order does not expand the scope of discovery to which any of the parties are otherwise entitled; it simply provides a mechanism for protecting sensitive discovery to which the parties are *already* entitled. *See* Doc. 14. Therefore, Mr. Shelton's Motion to Compel will be **DENIED**.

### III. MR. SHELTON'S MOTION FOR A BILL OF PARTICULARS (Doc. 101)

"If a defendant believes that an indictment does not provide enough information to prepare a defense, then he or she may move for a bill of particulars." *United States v. Livingstone*, 576 F.3d 881, 883 (8th Cir. 2009) (citing Fed. R. Crim. P. 7(f)). The decision whether to grant a motion for bill of particulars is committed to this Court's discretion. *See id.* On September 28, Mr. Shelton moved for a bill of particulars with regard to five specific matters. The Court will address each of these matters in turn.

The first matter concerns the Second Superseding Indictment's reference to unnamed alleged coconspirators of Mr. Shelton as "others known . . . to the Grand Jury." *See, e.g.*, Doc. 74, ¶ 15. Mr. Shelton wants to know who these "others known to the Grand Jury" are. The Court does not believe a bill of particulars is warranted on this matter, because the Government has already provided Mr. Shelton with transcripts of the Grand Jury testimony in this case. *See* Doc. 110, p. 6. In other words, Mr. Shelton already has available to him whatever information is "known to the Grand Jury."

The second matter concerns the Second Superseding Indictment's reference to "false and fraudulent pretenses, representations, and promises" by means of which the Defendants allegedly carried out a conspiracy "to deprive the citizens of Arkansas of the honest services of a public official." *See, e.g.*, Doc. 74, ¶ 15(a). Mr. Shelton wants to know what these "false and fraudulent pretenses, representations, and promises" are. The Court is of the opinion that the 37-page Second Superseding Indictment already makes abundantly clear what the "false and fraudulent pretenses, representations, and promises" are. The Court sees no need to recount here what anyone can read for themselves in the Second Superseding Indictment, but it will simply make the very general observation that with respect to Mr. Shelton the alleged "false and fraudulent pretenses, representations, and promises" largely involve disguising bribes as consulting fees, as described in rather painstaking detail within the Second Superseding Indictment.

The third matter concerns the sections of the Second Superseding Indictment that are entitled "Purposes of the Scheme" and "Manner and Means," respectively. *See id.* at ¶¶ 17–18. Although these sections enumerate five specific "purposes" and ten specific "manners and means," both sections also say that they "were not limited to" the ones specifically enumerated therein. *See id.* Mr. Shelton wants to know what purposes and manners and means were not specifically included in the Second Superseding Indictment. But this is essentially a request for evidentiary detail—not a request for notice of what Mr. Shelton is being charged with. Such requests are within the province of discovery—not bills of particulars. *See, e.g.*, *Hemphill v. United States*, 392 F.2d 45, 49 (8th Cir. 1968) ("The bill of particulars that was furnished precisely apprised the defendant of the nature of the charge against him with sufficient clarity and specificity to enable him

6

to prepare for trial. That portion of the motion wherein the defendant sought to determine the manner in which the sale of narcotics took place concerns evidentiary matters. Acquisition of evidentiary detail is not the function of the bill of particulars.").

The fourth matter concerns what "official acts" Mr. Woods took in furtherance of the scheme. Mr. Shelton points out that a public official cannot be convicted of honest services fraud unless the official committed an "official act" in exchange for a bribe, and that in *McDonnell v. United States*, the United States Supreme Court circumscribed the meaning of the term "official act" on constitutional grounds. *See* 136 S. Ct. 2355, 2361, 2365, 2367 (2016). He then contends that he cannot tell from the Second Superseding Indictment "whether the government contends all acts committed by Jon Woods were in his official capacity, or if the filing, sponsoring of, and voting on bills in the Senate are the only 'official acts.'" *See* Doc. 101, p. 3. Once again, this is a request for information that is outside the scope of what a bill of particulars is supposed to provide. The Second Superseding Indictment plainly and clearly articulates many "official acts" by Mr. Woods in furtherance of the alleged scheme, largely pertaining to the appropriation or disbursement of public funds to private entities. If Mr. Shelton is concerned that the Government might improperly argue or insinuate to the jury that this or that particular act is not "official" within the meaning of *McDonnell*, then that is something to be addressed, for example, through liminal rulings, prophylactic or curative jury instructions, mistrial, or even a directed verdict of acquittal, if necessary—not through a bill of particulars.

The fifth and final matter concerns the general reference in paragraph 11 of the Second Superseding Indictment to "Arkansas law." *See* Doc. 74, ¶ 11 ("According to Arkansas law . . . ."). Mr. Shelton wants to know which particular Arkansas laws are being

7

contemplated here. The Government has clarified in its Response that it is referring to Ark. Code Ann. § 14-166-201 *et seq.* Presumably this satisfies Mr. Shelton's request on this point. Accordingly, Mr. Shelton's Motion for a Bill of Particulars will be **DENIED**.

### IV. CONCLUSION

**IT IS THEREFORE ORDERED** that the Defendants' Expedited Joint Motion to Compel Discovery (Doc. 91), Mr. Shelton's Motion to Compel Production of Unredacted Discovery Materials (Doc. 129), and Mr. Shelton's Motion for a Bill of Particulars (Doc. 101) are all **DENIED**.

**IT IS SO ORDERED** on this 3rd day of November, 2017.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

NOV 0 3 2017

DOUGLAS F. YOUNG, Clerk
By _____ Deputy Clerk

8