IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**UNITED STATES OF AMERICA**                              **PLAINTIFF**

V.                  CASE NO. 5:17-CR-50010

**JONATHAN E. WOODS;**
**OREN PARIS III; and**
**RANDELL G. SHELTON, JR.**                          **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Currently before the Court are:

- Defendant Oren Paris III's Motion in Limine to Exclude any Reference to the "Shingle Resource Recycling, LLC" (hereinafter, "SRR") (Doc. 164), and the Government's Response (Doc. 184) and Proffer of Evidence in Support (Doc. 185);

- Dr. Paris's Motion in Limine Regarding Privileged Communications with George Hiller (Doc. 165), and the Government's Response (Doc. 186);

- Dr. Paris's Motion in Limine to Exclude any Assertion that Electronic Transmissions Bear an Interstate Nexus, and to Exclude the Electronic Transmissions Themselves for Purposes of Proving Violation of 18 U.S.C § 1343 (Doc. 166), the Government's Response (Doc. 190), and Dr. Paris's Reply (Doc. 208);[1]

- Dr. Paris's Motion to Strike Surplusage (Doc. 167), and the Government's Response (Doc. 199);

---

[1] At Doc. 195, Dr. Paris filed a duplicate of the attachments to his Reply at Doc. 208, but without any accompanying brief.

1

- A filing by Defendant Randell G. Shelton indicating that he joins the aforementioned four Motions by Dr. Paris, *see* Doc. 173; and

- Dr. Paris's Motion to Dismiss the Second Superseding Indictment or, in the Alternative, Renewal of His Motion to Sever (Doc. 163), and the Government's Response (Doc. 201).

For the reasons given below, all five of these Motions by Dr. Paris are **DENIED**.

## I. MOTION IN LIMINE REGARDING SRR (Doc. 164)

Dr. Paris asks the Court to "exclude any evidence related to" SRR, which he describes as "a business that was operated for a time on . . . a piece of real property purchased by Ecclesia College during the same period of time that Ecclesia received GIF monies from the NWAEDD." (Doc. 164, p. 1). Dr. Paris then asserts in conclusory fashion that "SRR bears no actual relevance with respect to the charges alleged herein," that "the factual timeline by which Ecclesia College interacted with SRR is complicated, difficult to follow, and contains aspects that the government could attempt to manipulate into what might appear to the layman as support for the charges alleged." *Id.* Dr. Paris does not offer any description of what these "aspects" of the relationship are, but instead simply states that "[a] complete and unadulterated rendition of the facts relating to SRR"—which are not provided in his Motion—"reveals that those facts bear no criminal element or relevance with respect to the charges alleged, and having to prepare to present a complete rendition of the facts relating to SRR (or to supplement an incomplete rendition of the same by the government) would be a time-consuming and needlessly prejudicial burden for Dr. Paris." *See id.* He then asks the Court to "exclude any reference to SRR whatsoever" as irrelevant under Fed. R. Evid. 401, and as unfairly prejudicial under Fed.

R. Evid. 403. *Id.* at 2. He further asks the Court to exclude any such references under Fed. R. Evid. 404 as inadmissible propensity evidence "to the extent the government avers that there is some nefarious element associated with Dr. Paris (sic) involvement with SRR." *Id.*

The Court cannot determine particular facts' relevance, potential for unfair prejudice, or potential for use as propensity evidence without being informed as to what the facts in question even are. Yet that is exactly what Dr. Paris is asking the Court to do. This factual vacuum is sufficient grounds for denying the Motion before ever even reaching the Government's Response.

However, the Government's Response provides additional grounds for denying the Motion, because the Government's Response is accompanied by a Proffer of the evidence regarding SRR that it would seek to admit at trial. *See* Doc. 185. The Court will avoid going into detail here about the facts in the Proffer, because the Proffer was filed under seal pursuant to the Protective Order (Doc. 14) in this case. But the Court will generally observe that the Proffer contains evidence that at one point all three Defendants in this case simultaneously held substantial shares of ownership in SRR, which was a for-profit business, and that shortly after Mr. Woods left his membership with SRR, he made an appropriation of public Arkansas funds to benefit SRR, while the other two Defendants were still members of SRR and were privately corresponding with Woods about his efforts to make the appropriation. *See* Doc. 185. These events all occurred during the time frame when the Second Superseding Indictment alleges that these three Defendants conspired to commit Honest Services Fraud.

Thus, these SRR-related events are relevant to the charges in this case, in that they provide context for the business and political relationships between these Defendants during the time of their alleged conspiracy, and evidence of these Defendants' knowledge of each others' business activities and efforts to obtain grant appropriations through the political process. It is "evidence tending to make the existence of a conspiracy more probable." *See United States v. Maxwell*, 643 F.3d 1096, 1101 (8th Cir. 2011). And again, the Court presently does not have any basis to conclude that this relevance is substantially outweighed by the risk of unfair prejudice, since Dr. Paris has not provided any elaboration on his bare contention that such unfair prejudice exists. Therefore, Dr. Paris's Motion in Limine to Exclude any Reference to the "Shingle Resource Recycling, LLC" (Doc. 164) will be **DENIED**.

## II. MOTION IN LIMINE REGARDING PRIVILEGED COMMUNICATIONS (Doc. 165)

Dr. Paris asks the Court to "exclude any evidence related to an October 17, 2015 conversation between [himself] and George Hiller," because he contends that this conversation "consisted of confidential communications made for the purpose of facilitating the rendition of legal advice to Dr. Paris" and is protected by the attorney-client privilege. *See* Doc. 165, p. 1. Dr. Paris says that Mr. Hiller "is an active member of the Georgia Bar in good standing," and that Dr. Paris turned to Mr. Hiller first after being contacted by the FBI on October 9, 2015 about the investigation that ultimately led to the instant charges against Dr. Paris, "specifically because of Mr. Hiller's legal expertise." *See id.* at 2. "The attorney-client privilege protects confidential communications between a client and his attorney made for the purpose of facilitating the rendering of legal services to the client. But when an attorney acts in other capacities, such as a conduit for a client's

funds, as a scrivener, or as a business advisor, the privilege does not apply." *United States v. Spencer*, 700 F.3d 317, 320 (8th Cir. 2012).

The Government responds with a description of the October 17, 2015 conversation between Mr. Hiller and Dr. Paris, as it was described to the Government by Mr. Hiller, and states that Mr. Hiller has never told the Government that he "served as legal counsel to Defendant Paris or that Defendant Paris sought legal advice from him." (Doc. 186, p. 3). Furthermore, the Government argues that it is very implausible that Dr. Paris could have reasonably believed an attorney-client relationship existed between himself and Mr. Hiller, since Mr. Hiller was not even licensed to practice law in Arkansas and was not a criminal defense lawyer. *See id.* at 6. The Government points to evidence that Dr. Paris had been "a friend" of Mr. Hiller "for a long time," and that at the time of the October 17, 2015 conversation Mr. Hiller was a member of the board of the same entity of which Dr. Paris was President and which was the subject of the instant investigation, and that Mr. Hiller had been a member of that board for more than a decade. *See id.* at 2. Given these facts, the Government argues that it is far more likely that this preexisting friendship and professional relationship was the reason for the October 17, 2015 conversation, than that Dr. Paris was seeking any sort of legal advice from Mr. Hiller. *See id.* at 6. Finally, the Government states that at any rate, it "does not intend to call Mr. Hiller as a witness in its case in chief," but that "should Defendant Paris testify, the Government would cross-examine him regarding the statement made to Mr. Hiller and if Defendant Paris testified inconsistently, the Government would call Mr. Hiller as a rebuttal witness." *Id.*

On the basis of the facts and representation presently before the Court, the Court believes that Dr. Paris's contention that he had an attorney-client relationship with Mr.

5

Hiller lacks factual support. Therefore, Dr. Paris's Motion in Limine Regarding Privileged Communications with George Hiller (Doc. 165) will be **DENIED** at this time. However, if Dr. Paris opts to take the stand during the trial, then the Court will permit him to re-raise this issue immediately before doing so, at which time the Court might conduct a *voir dire* of Mr. Hiller and Dr. Paris outside the presence of the jury to develop the factual record on this matter more thoroughly.

### III. MOTION IN LIMINE REGARDING ELECTRONIC TRANSMISSIONS (Doc. 166)

Dr. Paris and the Government agree that for each charge of Honest Services Wire Fraud in this case, the Government will have to prove that the wire transmission at issue involved an interstate nexus. *See* Doc. 166, p. 1; Doc. 190, p. 2. Dr. Paris points out that for every electronic transmission at issue in this case, the sending and receiving parties were both located in Arkansas. *See* Doc. 166, p. 2. He contends that this means the Government will be unable to prove that any of these electronic transmissions traveled in interstate commerce without the use of expert testimony. *See id.* Since the Government has not provided Dr. Paris with any notice of any intent to use expert testimony, Dr. Paris asks this Court to enter an order prohibiting "the Government from presenting to the jury the assertion that any alleged telephone or cell phone calls, text messages, e-mails, wires, or wire transfers between or involving any of the Defendants or their representatives . . . involve an Interstate Nexus." *Id.* at 1.

The Government responds that it does not intend to offer any expert testimony on this matter, and that none is necessary, because it will simply "call a witness from Google who will testify that" the electronic transmissions on which the Government will rely to prove an interstate nexus "use Google servers and no Google servers are in the State of

Arkansas." See Doc. 190, p. 3. The Government argues that such testimony would be permissible lay opinion testimony because it would be "rationally based on the witness's perception; . . . helpful to . . . determining a fact in issue; and . . . not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." See Fed. R. Evid. 701.

The Court is unaware of any cases holding that expert testimony is always necessary to establish an interstate nexus in wire fraud cases, and the Court is unaware of any good reason why it should conclude that such expert testimony would be necessary in this particular case. Identifying the physical location of Google's servers is not a task that strikes this Court as requiring "scientific, technical, or other specialized knowledge within the scope of Rule 702." Id. Accordingly, Dr. Paris's Motion in Limine to Exclude any Assertion that Electronic Transmissions Bear an Interstate Nexus, and to Exclude the Electronic Transmissions Themselves for Purposes of Proving Violation of 18 U.S.C § 1343 (Doc. 166) will be **DENIED**.[2]

---

[2] In his Reply, Dr. Paris mentions for the first time a prior request by the Government for a stipulation regarding foundation testimony by an FBI Special Agent, to the effect that this Agent conducted a forensic examination of a particular computer, and that "the emails, attachments and other items recovered by" that Agent "were items contained on" that computer. See Doc. 208-1, pp. 1–2. Dr. Paris's argument regarding this proposed stipulation is not entirely clear to the Court, but it appears Dr. Paris might be characterizing this foundation testimony as expert testimony and objecting to its admissibility because the Government never provided notice of intent to call any expert in this case. If that is what Dr. Paris is saying, then the Court does not share his understanding of the proposed stipulation. It appears to the Court that the Government is simply referring to "[t]estimony of a [w]itness with [k]nowledge . . . that an item is what it is claimed to be" pursuant to Fed. R. Evid. 901(b)(1): *i.e.*, that the items are indeed "emails, attachments and other items" that this particular Agent recovered from a particular computer.

## IV. MOTION TO STRIKE SURPLUSAGE (Doc. 167)

Dr. Paris asks the Court to strike five passages from the Superseding or Second Superseding Indictments under Fed. R. Crim. P. 7(d) "as irrelevant or inflammatory and prejudicial surplusage": (1) allegations about Dr. Paris's and his family's income during time periods around the time of the alleged crimes, see Doc. 167, ¶¶ 1, 4; (2) the use of the word "purportedly" in reference to the purpose for which a particular individual was hired by Dr. Paris, see id. at ¶ 2; and (3) allegations that Dr. Paris contends either are "not supported by the evidence," see id. at ¶ 3, or that concern business transactions that were not bribes and therefore are "irrelevant and immaterial," see id. at ¶ 5. The Court finds that all of these allegations are directly relevant to the Government's theory of the case. To the extent that Dr. Paris disagrees or contends they are false, he is perfectly free to argue so to the jury. His Motion to Strike Surplusage (Doc. 167) will be **DENIED**.

## V. MOTION TO DISMISS THE SECOND SUPERSEDING INDICTMENT (Doc. 163)

Dr. Paris asks the Court to dismiss the Second Superseding Indictment, which was filed on September 13, 2017, because it "unfairly impinges upon the rights of Dr. Paris in that it represents a sea change in prosecution theory while decimating the defense's trial preparation time from six months to two and a half, and further resulted in a third dump of discovery materials provided on intelligible format only on the 19th of October with a progression of trickling disclosures thereafter." See Doc. 163, p. 3. What Dr. Paris characterizes as a "sea change in prosecution theory" is in fact simply the addition of a conspiracy charge, premised on essentially the same factual allegations as were made in both preceding indictments in this case. The Court finds it almost impossible to believe that counsel for Dr. Paris never anticipated and planned for the possibility that the factual

allegations in the previous indictments might be used to support a conspiracy charge, and that in any event counsel for Dr. Paris was not already preparing a defense that would account for the possibility of liability for the acts of his codefendants, given that both of the preceding indictments had already explicitly alleged that Dr. Paris aided and abetted his codefendants in a "scheme to defraud." *See* Doc. 1, ¶¶ 14–15 (charging violations of 18 U.S.C. § 2, which prohibits aiding and abetting the commission of offenses against the United States, through a "scheme and artifice to defraud"); Doc. 29, ¶¶ (14–15) (same); *United States v. Zackery*, 494 F.3d 644, 646 (8th Cir. 2007) (affirming conviction of an offense under 18 U.S.C. § 2 "on a *Pinkerton* theory of liability when the indictment did not charge a conspiracy offense"). The Court finds that the filing of the Second Superseding Indictment nearly three months before trial did not prejudice Dr. Paris, and it will not be dismissed.[3]

Alternatively, Dr. Paris renews his Motion to Sever, which this Court previously rejected half a year ago. *See* Doc. 57. As the Court observed in that prior Order:

> "Severance is appropriate if there is 'a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *United States v. Wilkens*, 742 F.3d 354, 358 (8th Cir. 2014) (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)). "[A] defendant seeking severance must show 'real prejudice,' that is 'something more than the mere fact that he would have had a better chance for acquittal had he been tried separately.'" *United States v. Blaylock*, 421 F.3d 758, 766 (8th Cir. 2005) (quoting *United States v. Oakie*, 12 F.3d 1436, 1441 (8th Cir. 1993)). "To show real prejudice, the defendant must establish that '(a) his defense is irreconcilable with that of his co-defendant or (b) the jury will be unable to compartmentalize the evidence as it relates to the separate defendants.'" *United States v. Davis*, 534 F.3d 903, 916–17 (8th Cir. 2008) (quoting *United States v. Mickelson*, 378 F.3d 810, 818 (8th Cir. 2004)). "In addition,

---

[3] Dr. Paris also raises the same complaints about discovery in this case that this Court has previously rejected when raised by Mr. Shelton. *See* Docs. 150–51. The Court rejects them here too, for the same reasons as before.

> the Supreme Court has recognized that a defendant is deprived of his rights under the Confrontation Clause when a co-defendant's confession that incriminates both defendants is introduced at their joint trial, even if the jury is instructed to consider that confession only against the non-testifying defendant." *United States v. Barber*, 901 F. Supp. 2d 1119, 1122 (N.D. Iowa 2012) (citing *Bruton v. United States*, 391 U.S. 123 (1968)).
>
> However, "[t]he Supreme Court has made it clear that the risk of prejudice posed by joint trials is best cured by careful and thorough jury instructions . . . ." *United States v. Delpit*, 94 F.3d 1134, 1144 (8th Cir. 1996). Ultimately, even if prejudice is shown, Rule 14 does not necessarily require severance; rather, the decision whether to sever trials or to tailor some other form of relief is committed to the district court's discretion. *Zafiro*, 506 U.S. at 538–39; *United States v. Midkiff*, 614 F.3d 431, 440 (8th Cir. 2010).

(Doc. 57, pp. 2–3).

In support of his renewed Motion to Sever, Dr. Paris essentially makes two arguments: first, that at trial he "will have to stand by as the government" introduces evidence that has little if anything to do with him; and second, that at trial the Government might introduce prior confessions or inculpatory statements by Mr. Woods, which would create a conflict between Dr. Paris's Sixth Amendment right to confront witnesses against him and Mr. Woods's Fifth Amendment right not to testify.

The Court rejects the first argument now for the same reasons it rejected them in Dr. Paris's last Motion to Sever. *See* Doc. 57. And as implied by its discussion above, the Court does not believe that the facts of this case have materially changed in any way that would warrant revisiting its analysis.

As for the second argument, the Government has stated that it will not introduce any testimonial statements made by Mr. Woods during its case-in-chief, but instead will only introduce such statements in rebuttal if Mr. Woods voluntarily takes the stand and provides testimony that is materially inconsistent with those prior statements. Thus, there is no potential conflict between these two Defendants' Sixth and Fifth Amendment rights.

*See Nelson v. O'Neil*, 402 U.S. 622, 629 (1971) ("We conclude that where a codefendant takes the stand in his own defense, denies making an alleged out-of-court statement implicating the defendant, and proceeds to testify favorably to the defendant concerning the underlying facts, the defendant has been denied no right protected by the Sixth and Fourteenth Amendments."). Therefore, Dr. Paris's Motion to Dismiss the Second Superseding Indictment or, in the Alternative, Renewal of His Motion to Sever (Doc. 163) will be **DENIED**.

## VI. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Oren Paris III's Motion to Dismiss the Second Superseding Indictment or, in the Alternative, Renewal of His Motion to Sever (Doc. 163), Motion in Limine to Exclude any Reference to the "Shingle Resource Recycling, LLC" (Doc. 164), Motion in Limine Regarding Privileged Communications with George Hiller (Doc. 165), Motion in Limine to Exclude any Assertion that Electronic Transmissions Bear an Interstate Nexus, and to Exclude the Electronic Transmissions Themselves for Purposes of Proving Violation of 18 U.S.C § 1343 (Doc. 166), and Motion to Strike Surplusage (Doc. 167) are all **DENIED**.

**IT IS SO ORDERED** on this 29th day of November, 2017.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE