IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**UNITED STATES OF AMERICA**                                              **PLAINTIFF**

**V.**                       **CASE NO. 5:17-CR-50010**

**JONATHAN E. WOODS;**
**OREN PARIS III; and**
**RANDELL G. SHELTON, JR.**                                **DEFENDANTS**

## OPINION AND ORDER

Currently before the Court are Defendant Randell Shelton's Motion to Compel (Doc. 270) and the Government's Response (Doc. 276) in opposition; the Government's Motion to Quash *In Personam* Subpoenas (Doc. 271) and Mr. Shelton's Response (Doc. 275) in opposition; and the Government's Motion to Quash Request for Production of Certain Information (Doc. 273) and Mr. Shelton's Response (Doc. 277) in opposition. Each of these three Motions is **GRANTED IN PART AND DENIED IN PART** as described below.

## I. BACKGROUND

A hearing is set to be held in this matter at 9:00 a.m. tomorrow, January 24, 2018. The purpose of this hearing is to receive evidence on the matter of 79 covert recordings made by a Government witness named Micah Neal (recordings which were disclosed by the Government to the Defendants in this case on November 15, 2017, only a few weeks before trial was set to begin in this case), and on the related matter of the laptop that FBI Special Agent Robert Cessario used to access these recordings. Each of the instant Motions pertains in some way to tomorrow's hearing. All three Motions were filed last

1

week on January 19, and all three Responses thereto were filed yesterday on January 23. These Motions are now ripe for decision.

## II. MR. SHELTON'S MOTION TO COMPEL (Doc. 270)

On January 19, Mr. Shelton filed a Motion to Compel, asking this Court to order the Government to produce to him various materials. Mr. Shelton's Motion begins by stating that "[i]n accordance with Local Rule 7.2," Mr. Shelton's counsel "have in good faith conferred or attempted to confer with the government's attorneys in an effort to resolve this dispute, but the government's attorneys have not responded to them regarding these issues and as a result the parties are unable to resolve their disagreement without the intervention of the Court." See Doc. 270, ¶ 1. The Court would observe at the outset that Local Rule 7.2(g) requires parties filing discovery motions to state that they "have conferred in good faith on the specific issue or issues in dispute"— not that they have *attempted* to confer. Mr. Shelton's Motion does not provide any details of this conferral, but the Government's Response describes an email from Mr. Shelton's counsel to the Government on Friday, January 5, a Government email in response to Mr. Shelton's counsel on Monday, January 8, a Government discovery production on January 12, another email from Mr. Shelton's counsel to the Government at 9:08 p.m. on January 18 requesting additional discovery, a Government email in response at 10:00 a.m. on January 19, and another email from Mr. Shelton's counsel half an hour later, followed by the filing of the instant Motion later that same day. See Doc. 276, ¶¶ 4–10. Under ordinary circumstances, this is not the sort of dialogue that this Court would consider sufficient to satisfy Local Rule 7.2(g)'s requirement of having "conferred in good faith" prior to filing a motion to compel. Rather, it has the appearance of having been arbitrarily

2

cut short by the movant. The Court also observes that despite Local Rule 7.2(a)'s requirement that a motion like this one be accompanied by a "brief consisting of a concise statement of relevant facts and applicable law," Mr. Shelton's Motion does not cite to a single rule, statute, order, case, or other legal authority to explain why he is entitled to any of the discovery he seeks.

Ordinarily, these deficiencies might be sufficient grounds to deny Mr. Shelton's Motion. See Local Rule 7.2(g). Here, the Court recognizes that the evidentiary hearing for which Mr. Shelton seeks the requested materials was less than a week away at the time he filed his Motion, and that Mr. Shelton's counsel was thus operating under an unusual time crunch. Accordingly, the Court is not going to deny Mr. Shelton's Motion summarily. But Mr. Shelton's requests will nevertheless largely be denied, because most of them are far too broad. And the Court highlights the aforementioned deficiencies simply to observe that this problem of overbreadth might have been avoided if the Motion had been preceded by a more meaningful conferral process and was accompanied by citation to legal authority.

Mr. Shelton requests five sets of material. The first set is "all of Cessario's text messages from February 8, 2016 to present in an unaltered, unedited, complete, native or source format." (Doc. 270, ¶ 5). Mr. Shelton does not explain, and the Court does not understand, how Mr. Cessario's actions with respect to the recordings and the laptop at issue in this hearing could entitle Mr. Shelton to every single text message Mr. Cessario has sent or received over the last two years. This request is far too broad. Therefore it will be denied.

3

Mr. Shelton's second request is for "all emails from both Cessario's FBI email accounts . . . and from his personal [Yahoo] email account that are in the government's possession that refer to this matter." *See id.* at ¶ 7. It is not clear to the Court what Mr. Shelton means by "this matter"—the relatively narrow matter of the Neal recordings or of Mr. Cessario's laptop, or alternatively, the entire investigation of which the instant case is but one relatively small part, or instead, something somewhere in between these distant poles. It is also not clear to the Court whether Mr. Shelton is simply asking the Court to compel the Government to comply with its preexisting and ongoing discovery obligations in this case, *see* Doc. 248, p. 2, or whether he is asking for something more far-reaching than that. In either event, he does not explain why Court intervention is even necessary. Therefore, this request will be denied.

Mr. Shelton's third request is for "all emails from any other case agent or government employee that references the government's investigation or prosecution of this matter." (Doc. 270, ¶ 7). This request is denied for the same reason his second request is denied.

Mr. Shelton's fourth request is for "all rough notes in the government's possession regarding alleged co-conspirator Micah Neal." *Id.* at ¶ 8. The Court does not know what Mr. Shelton means by "rough notes." But as the Government correctly points out, this Court has previously ordered that "[e]xcept as provided in Federal Rule of Criminal Procedure 16(a)(1), the Government is not obligated to disclose reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case," (Doc. 59, p. 6), and the Eighth Circuit has previously observed that "[r]eports, memoranda, or other

internal government documents created by a government agent in connection with the investigation or prosecution of the case are immune from discovery," *United States v. Robinson*, 439 F.3d 777, 779–80 (8th Cir. 2006). Mr. Shelton does not offer any explanation as to why he should be entitled to the production of work product that is ordinarily off-limits, other than to hint, without elaboration, that it has something to do with Mr. Cessario's "destruction of evidence from his computer." See Doc. 270, ¶ 8. The Court does not see the connection. Therefore, this request is denied.

Mr. Shelton's fifth and final request is for "any documents, memoranda, emails, or other communications of any kind that are in the government's possession and that reference the health information that was allegedly the basis, at least in part, for Cessario to 'wipe' his computer on December 7, 2017." *Id.* at ¶ 9. Unlike the previous four requests, this request is specific enough to put the Government on notice of what is being requested. And unlike the previous four requests, it is narrow enough to encompass only materials that are relevant to tomorrow's hearing. The Government states in its Response that "the United States is not in possession of any documents or memoranda regarding the medical condition of SA Cessario in addition to" what it has already given to Mr. Shelton. See Doc. 276, ¶ 48. But the Court will grant this request, to the effect that if the Government comes into possession of such documents or memoranda at some point in the future, then they must be turned over to Mr. Shelton, subject to the Protective Order (Doc. 14) in this case.

### III. GOVERNMENT'S MOTION TO QUASH *IN PERSONAM* SUBPOENAS (Doc. 271)

On January 16, Mr. Shelton's counsel caused subpoenas to be served on Kenny Elser, Kyra Jenner, and Aaron Jennen, all of whom are attorneys for the Government in

this case, commanding them to testify at tomorrow's hearing. Three days later, the Government filed a Motion to Quash these subpoenas. Mr. Shelton filed his Response yesterday. The Court will grant the Government's Motion with respect to Ms. Jenner, because Mr. Shelton requested in his Response that the Court release Ms. Jenner from the subpoena he caused to be served on her. *See* Doc. 275, p. 6.

With respect to Mr. Elser and Mr. Jennen, the Government relies on 5 U.S.C. § 301, 28 C.F.R. § 16.21 *et seq.*, and the Supreme Court case of *United States ex rel. Touhy v. Regan*, 340 U.S. 462, 468 (1951), for the proposition that their subpoenas must be quashed because they were not accompanied by "an affidavit, or, if that is not feasible, a statement by the party seeking the testimony or by the party's attorney setting forth a summary of the testimony sought." 28 C.F.R. § 16.23(c). The parties disagree on whether this *Touhy* line of authority applies in criminal proceedings like the instant one, but the Court need not resolve that point of contention at this time, because Mr. Shelton's Response provides the summary of these two individuals' sought testimony that was previously lacking. Specifically, Mr. Shelton seeks: (1) testimony from Mr. Elser on whether Mr. Elser has any knowledge as to whether any Government agent pressured Mr. Neal or Defendant Jonathan Woods not to run for election to public office; and (2) testimony from both Mr. Elser and Mr. Jennen on what knowledge they may have of various instances of alleged misconduct by Mr. Cessario, and when, if ever, they acquired such knowledge.

This Court is of the opinion that it should be extremely rare that attorneys in a criminal case be placed under oath and asked questions about their role or advocacy in the matter at hand. Such a scenario raises obvious problems with respect to potential

conflicts of interest and issues of privilege. See, e.g., Arkansas Rule of Professional Conduct 3.7 & comments. Mr. Shelton's Response does not explain why he cannot obtain the information he seeks from other witnesses at tomorrow's hearing who are not attorneys of record in this case. Mr. Shelton's counsel will have ample opportunity at tomorrow's hearing to develop the factual record on Mr. Cessario's alleged misconduct, through a wide variety of witnesses other than opposing counsel. And the Court will permit Mr. Shelton's counsel to ask at least a few questions of Mr. Cessario and Mr. Neal regarding whether any Government agent pressured Mr. Neal or Mr. Woods not to run for election to public office. Given all of this, the Court sees no good reason at this time to require Mr. Elser or Mr. Jennen to testify. Accordingly, the subpoenas that Mr. Shelton caused to be served on them will be quashed.

However, the Court will require Mr. Elser and Mr. Jennen, as attorneys of record in this case, to attend tomorrow's hearing. Since they are attorneys of record for the Government and are not presently expected to offer testimony, they will not be required to leave the courtroom during the testimony of any other witnesses. See Fed. R. Evid. 615. If, after *all* other witnesses at the hearing have finished providing testimony, counsel for Mr. Shelton believes it is necessary to receive testimony from Mr. Elser or Mr. Jennen, then he will be given an opportunity to make a record on that issue, and the Court will consider and/or rule upon whatever argument or oral motion he makes at that time.

### IV. GOVERNMENT'S MOTION TO QUASH PRODUCTION REQUEST (Doc. 273)

On January 9, Mr. Shelton's counsel caused subpoenas to be served on the FBI Custodian of Records, FBI Supervisory Special Agent Brenan Despain, Mr. Cessario, and a contract employee at the United States Attorney's Office in the Western District of

7

Arkansas named Charles Kerr, commanding them to give testimony at tomorrow's hearing and to bring various documents when they appear. The Government is not seeking quashal of these subpoenas to the extent they compel testimony from these individuals, but the Government has moved to quash these subpoenas with respect to *some* of the *documents* requested therein.

As this Court recently explained in another Order in this case, *see* Doc. 264, pp. 3–4, Mr. Shelton bears the burden of proof to show:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of [the hearing] by exercise of due diligence; (3) that the party cannot properly prepare for [the hearing] without such production and inspection in advance of [the hearing] and that the failure to obtain such inspection may tend unreasonably to delay the [hearing];[1] and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*United States v. Nixon*, 418 U.S. 683, 699–700 (1974). "[I]n order to carry his burden," Mr. Shelton "must clear three hurdles: (1) relevancy; (2) admissibility; [and] (3) specificity." *Id.* at 700.

Importantly, "subpoenas duces tecum are not meant to serve as tools of discovery in criminal cases." *United States v. Bueno*, 443 F.3d 1017, 1026 (8th Cir. 2006) (citing *Nixon*, 418 U.S. at 698–99). And even if Mr. Shelton satisfies "the minimal requirements for relevance, admissibility, and specificity under *Nixon*, the district court may still properly quash a subpoena under Rule 17(c) if 'compliance would be unreasonable or oppressive.'" *See United States v. Hardy*, 224 F.3d 752, 756 (8th Cir. 2013) (quoting Fed. R. Crim. P. 17(c)(2)). Ultimately, the decision whether to quash these subpoenas is

---

[1] Obviously, this factor only applies to whatever extent a subpoena seeks to compel production of documents in advance of the hearing.

8

committed to this Court's discretion. See Bueno, 443 F.3d at 1026. When exercising that discretion, this Court may "determine whether 'the burden of producing subpoenaed records greatly outweighs any relevance they may have to the case.'" See Hardy, 224 F.3d at 756 (quoting United States v. Roach, 164 F.3d 403, 412 (8th Cir. 1998)).

To the extent the Government seeks quashal of requests for documents that the Government contends either do not exist or are not in its possession, the Government's motion will be denied. Instead, the subpoenaed witness will be required to state, on the record at the hearing, the reason why it has not produced the subpoenaed documents. If that reason is that the documents do not exist or are not in its possession, then that will suffice to comply with the subpoena. After all, one can't produce what one doesn't have.

The Government's request for quashal will be granted in part and denied in part with respect to Mr. Cessario's Official Personnel File and Mr. Cessario's Office of Professional Responsibility file, as follows: to whatever extent these materials exist, the Government must provide them to the Court for in camera review **by no later than 4:00 p.m. central time today (January 24, 2018)**, so that the Court may assess whether they have any relevance to the hearing.

The Government's request for quashal will be granted in part and denied in part with respect to electronic communications as described in Paragraph I on page 8 of Doc. 273 and in Paragraph A on page 10 of Doc. 273, as follows: the Government must provide to counsel for Mr. Shelton all Brady/Giglio materials included within these communications that pertain to the 79 covert Neal recordings or to Mr. Cessario's actions with respect to the laptop that he used to access these recordings. If for some reason the Government is unable to obtain and produce these Brady/Giglio materials before the

hearing begins, then the Government will be required to state the reasons for its failure to comply on the record when the hearing begins, and to produce these *Brady/Giglio* materials to counsel for Mr. Shelton as soon as it obtains them. If counsel for Mr. Shelton does not receive these *Brady/Giglio* materials until after the hearing has concluded, then the Court will entertain a motion by Mr. Shelton, after he receives these *Brady/Giglio* materials, to supplement the record or to hold a supplementary hearing. The subpoenas will be quashed with respect to all other communications described in Paragraph I on page 8 of Doc. 273 and in Paragraph A on page 10 of Doc. 273, because Mr. Shelton has not shown that the materials encompassed by these extremely broad requests are relevant or admissible.

With these rulings, the Court believes it has addressed all matters disputed by the parties with respect to the Government's Motion to Quash Request for Production of Certain Information (Doc. 273). But if the Court has inadvertently neglected to rule on any particular quashal request in that Motion, then the parties should promptly make the Court aware in order to obtain such a ruling in advance of the hearing.[2]

## V. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Randell Shelton's Motion to Compel (Doc. 270), the Government's Motion to Quash *In Personam* Subpoenas (Doc. 271), and the Government's Motion to Quash Request for Production of Certain Information (Doc. 273) are each **GRANTED IN PART AND DENIED IN PART** as described above.

---

[2] This is **not** an invitation to relitigate or reconsider rulings that have already been made in this Order.

**IT IS SO ORDERED** on this 24th day of January, 2018.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE