**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

**UNITED STATES OF AMERICA** **PLAINTIFF**

**V.** **CASE NO. 5:17-CR-50010**

**JONATHAN E. WOODS;
OREN PARIS III; and
RANDELL G. SHELTON, JR.** **DEFENDANTS**

**OPINION AND ORDER**

Currently before the Court are:

- Defendant Randell G. Shelton's Second Motion in Limine to Preclude the Government's Use of the Terms "Bribe," "Kickback," or Their Synonyms at Trial (Doc. 304) and Memorandum in Support (Doc. 305); and the Government's Response (Doc. 306);
- The Government's Second Motion in Limine (Doc. 302) and Brief in Support (Doc. 303); and the Joint Motion and Brief in Response to Government's Second Motion in Limine (Doc. 307) filed by Defendants Jonathan E. Woods, Oren Paris III, and Mr. Shelton;
- Mr. Shelton's Motion to Compel Disclosure of Evidence pursuant to *Brady* and the Sixth Amendment to the United States Constitution (Doc. 310);
- Mr. Shelton's Motion for Severance of Defendants, or in the Alternative, Severance of Count Four of the Second Superseding Indictment (Doc. 311); and
- The Government's Notice of Intent to Introduce 404(b) Evidence (Doc. 309); and Mr. Woods's Response (Doc. 313).

For the reasons given below, Mr. Shelton's Second Motion in Limine is **DENIED**, the Government's Second Motion in Limine is **GRANTED IN PART AND DENIED IN PART**, Mr. Shelton's Motion to Compel is **DENIED**, and Mr. Shelton's Motion for Severance is **DENIED**.

## I. MR. SHELTON'S SECOND MOTION IN LIMINE (Doc. 304)

Mr. Shelton asks the Court to "issue an order precluding the Government from using the terms 'bribe,' 'bribery,' kickback,' or their synonyms at trial except during opening statement (with limitations), closing arguments (with limitations), and instructions." (Doc. 304, p. 1). He offers two[1] arguments in support of this Motion. First, Mr. Shelton argues that the term "bribe" would constitute improper testimony regarding the Defendants' mental state under Fed. R. Evid. 701. Second, he argues that the probative value of the term "bribe" would be substantially outweighed by the danger of unfair prejudice under Fed. R. Evid. 403. The Court finds neither of these arguments persuasive.

Rule 701 states that "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Mr. Shelton contends that if a witness were to use the word "bribe"

[1] In addition to the arguments discussed in this Order, Mr. Shelton's Motion also states that it is being made "pursuant to the Fifth Amendment's Due Process Clause." *See* Doc. 304, p. 1. But neither Mr. Shelton's Motion nor its brief in support contains any elaboration on this point. Since Mr. Shelton has not provided any argument or citation of authority with respect to the Fifth Amendment, and since the Court does not know what the basis is for Mr. Shelton's Fifth Amendment contention, the Court will not consider it.

or some similar word in his or her testimony at trial, then it would be inadmissible lay opinion testimony because none of these three requirements under Rule 701 would be satisfied. The Court disagrees, and can imagine countless scenarios under which use of the word "bribe" by a witness at trial could comport with the requirements of Rule 701. To give but one simple example, a witness could testify that he received a cash payment in exchange for the performance of an official act, and that he understood the payment to be a bribe, based on his conversations with the person who handed him the cash.

As for Rule 403, it permits the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Mr. Shelton speculates that if the Government were to ask a hypothetical witness "[o]n what dates were these *bribes* (or *kickbacks*) made," such a question "would improperly contain an improper assumption of the witness that a bribe or kickback was paid." *See* Doc. 305, p. 5 (emphasis in original). But this argument simply assumes, without explanation, that the questions preceding this one will have failed to lay any foundation for this question. The Court sees no reason to assume right now that the Government will never be able to lay any such foundation with respect to any witness at trial, given that the Government's central theory of this case is that these Defendants conspired to bribe Mr. Woods.

The Court will remain mindful throughout trial of the requirements of Rules 701 and 403. And the Court does not mean to say that, in the face of proper and specific objections, it will permit the Government or any other party to pose questions to witnesses that lack proper foundations or that are gratuitously and unfairly prejudicial. But there is no reason at this time to issue the sort of blanket prohibition that Mr. Shelton requests. Therefore, Mr. Shelton's Second Motion in Limine will be **DENIED**.

## II. THE GOVERNMENT'S SECOND MOTION IN LIMINE (Doc. 302)

On March 2, 2018, this Court entered an Opinion (Doc. 297) and Order (Doc. 298) finding, *inter alia*, that FBI Special Agent Robert Cessario violated these defendants' Fifth Amendment rights by destroying "potentially useful evidence" in "bad faith," when he wiped a laptop computer in his possession after having been instructed by one of the Government's attorneys in this case to deliver it to an FBI forensic examiner in anticipation of an evidentiary hearing. *See* Doc. 297, pp. 30–31, 37, 45. The original purpose of that hearing was to determine when the Government had first become aware of certain secret recordings that Micah Neal (a cooperating witness in this case) had made of Mr. Woods and others. *See id.* at 30–31. The laptop's relevance to the hearing was that Agent Cessario had previously used it to access the Dropbox account where a paralegal for Neal's attorney had uploaded the recordings at issue; and the purpose of the forensic examination of the laptop was to find information about when and how many times it had been used to access the Dropbox account. *See id.* Ultimately, notwithstanding the wiping of the laptop, the Court was able to determine when the Government had first become aware of the secret Neal recordings, on the basis of independent evidence (including records from Dropbox). *See id.* at 33–36. Then, after thoroughly exploring the matter of the laptop wipe, *see id.* at 36–43, the Court concluded that although "Agent Cessario committed intentional misconduct when he wiped the laptop," there was "no evidence in the record to show, and no good reason to believe, that he destroyed any information that is material to the charges and defenses in this case but not already in the Defendants' possession," *see id.* at 43. As a proportional sanction for this constitutional violation, the Court ordered that "the Government may not introduce in its case-in-chief at trial any

covert recordings that were made by Micah Neal," and that "the Government may not call FBI Agent Robert Cessario as a witness in its case-in-chief at trial." *See id.* at 45.

Now, in its Second Motion in Limine, the Government is asking the Court to exclude evidence at trial concerning Agent Cessario's wiping of his laptop, on the grounds that such evidence would be irrelevant and unfairly prejudicial. The Defendants, in their Joint Response,[2] argue that they need to introduce such evidence in order to have a meaningful opportunity to cross-examine Mr. Neal and attack his credibility when he testifies at trial. *See* Doc. 307, ¶¶ 10–12. In support of this argument, the Defendants say that "[t]he recordings Neal covertly conducted for at least several months in 2016 go directly to his credibility, motives, and bias as a witness," and that "[t]he evidence and timeline of events leading to Neal turning over the recordings to Cessario are relevant and give reasonable inference for a fact finder to determine if Neal is really testifying to clear his conscience, or if Neal is testifying because he has pled guilty to a felony, and he is willing to do or say anything to minimize his punishment." *See id.* at ¶ 12. But the Government is not asking the Court to prohibit the Defendants from cross-examining Mr. Neal about any of that; it is simply asking the Court to prohibit the Defendants from introducing evidence that *Agent Cessario* wiped the laptop computer that *Agent Cessario* used to access the Dropbox account where Mr. Neal's recordings were stored. The Defendants say they should be permitted to inquire into "why evidence Neal created could

[2] Technically, the Defendants' Response is styled "Joint *Motion* and Brief in Response." *See* Doc. 307, p. 1 (emphasis added). The Court is unable to discern from this filing what relief the Defendants are seeking other than the denial of the Government's Second Motion in Limine. Therefore the Court will simply construe this filing as an ordinary response in opposition to the Government's Motion, and will ignore the word "Motion" that appears in the title of this joint filing.

very well be missing, how that evidence went missing, and how it could directly relate to credibility, bias, and motive of Neal." *See id.* But the Defendants do not explain what *Agent Cessario*'s actions with respect to wiping his laptop have to do with *Mr. Neal*'s credibility as a witness, and the Court does not see what the two have to do with each other.

The Defendants are free to cross-examine Mr. Neal about the recordings he made. They are free to ask him about his interactions with Agent Cessario. They are free to ask him who he gave his recordings to and when he did so. They are free to ask him about his motives for testifying. And perhaps Mr. Neal's responses to those questions will lay some presently unforeseeable foundation to connect his testimony with Agent Cessario's decision to wipe the laptop. But on the record presently before this Court, the two simply do not appear to have anything to do with each other. As noted above, the Court has already found that there is "no evidence in the record to show, and no good reason to believe, that [Agent Cessario] destroyed any information that is material to the charges and defenses in this case but not already in the Defendants' possession." *See* Doc. 297, p. 43. Absent some new or different evidence to undermine that finding, excluding evidence of Agent Cessario's laptop wipe will not deprive the Defendants of a meaningful opportunity to cross-examine Mr. Neal.

In contrast to the minimal probative value of such evidence, the danger of unfair prejudice that it presents is obvious and extreme. The aforementioned evidentiary hearing concerning the Neal recordings lasted three days, and an enormous portion of that was consumed with the facts and issues surrounding Agent Cessario's decision to wipe his laptop. Thus, if evidence of his laptop wipe were introduced at trial, it would likely

devolve into a bewildering multi-day mini-trial on that issue alone, despite the fact that it has nothing to do with the charges and defenses in this case. And after being inundated with days' worth of evidence regarding Agent Cessario's misconduct, there would be a high risk that the jury might base its verdict on a desire to punish the Government for Agent Cessario's misconduct instead of on the overall body of evidence that is relevant to the charges and defenses in this case. This is precisely the sort of situation for which Rule 403 authorizes courts to exclude evidence whose probative value "is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues," or "wasting time." But the Court is also cognizant that it cannot possibly anticipate how all of the evidence will come in at trial, and that testimony may well be given that could alter the foregoing analysis.

Therefore, the Court will **GRANT IN PART AND DENY IN PART** the Government's Second Motion in Limine as follows. The Court will order that no party may attempt to introduce evidence at trial concerning FBI Special Agent Robert Cessario's wiping of his laptop computer, or make any reference to that event in the presence of the jury, without having first obtained leave from the Court to do so. If, during trial, any party believes an adequate foundation has been laid to justify the introduction of such evidence, then it may seek leave from the Court to do so; but it must seek such permission outside the presence of the jury.

## III. MR. SHELTON'S MOTION TO COMPEL (Doc. 310)

Mr. Shelton has filed a Motion asking this Court to compel the Government to provide him with the following information about Agent Cessario: (1) the date he was removed as an agent from this case; (2) the date(s) he was removed as an agent from

any other cases on which he may have been a case agent; (3) what, if any, disciplinary action has been taken against him by the FBI, the Department of Justice, or the Office of Inspector General; and (4) unspecified "additional evidence." *See* Doc. 310, pp. 1–2. Mr. Shelton contends that he is entitled to this information under the Sixth Amendment as well as under the case of *Brady v. Maryland*, 373 U.S. 83 (1963). The Court will not address Mr. Shelton's passing references to the Sixth Amendment, because he does not provide any explanation or citation to authority showing why the Sixth Amendment entitles him to this information. As for *Brady*, that case entitles defendants to "[a]ny evidence which might tend to exculpate" them, "mitigate punishment, or impeach testimony which may be determinative of" their "guilt or innocence"; and the scheduling orders in this case have already imposed on the Government an ongoing requirement to produce such evidence to these Defendants. *See* Doc. 59, p. 3; Doc. 248, p. 2; *Brady*, 373 U.S. at 87 ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment . . . .").

The only argument Mr. Shelton makes as to how this requested information could be *Brady* material is his contention (again without citation to authority) that "the fact that SA Cessario was removed from at least one other case is at the very least reverse 404(b) evidence to show intent, plan, and knowledge." *See* Doc. 310, p. 2. The Court is not sure what Mr. Shelton means by this. "'Reverse 404(b) is a term some courts have used to refer to evidence of prior bad acts by a third party, introduced by the defendant *and offered to implicate the third party in the charged crime*." *United States v. Battle*, 774 F.3d 504, 512 (8th Cir. 2014) (emphasis added). Surely Mr. Shelton is not contending that Agent Cessario conspired to bribe Mr. Woods. But if he is so contending, the record in

this case contains no basis whatsoever to support that contention. Accordingly, Mr. Shelton's Motion to Compel will be **DENIED**.

## IV. MR. SHELTON'S MOTION FOR SEVERANCE (Doc. 311)

On April 2, 2018, Mr. Shelton filed a Motion asking the Court to sever Mr. Woods's trial from the trial of Mr. Shelton and Mr. Paris, or in the alternative to sever Count Four from the other counts of the Second Superseding Indictment. The Second Amended Pretrial Scheduling Order stated:

> Pursuant to Federal Rule of Criminal Procedure 12(c), the Court previously required that any defense, objection or request capable of determination without trial of the general issue must be raised by written motion filed not later than **NOVEMBER 8, 2017**. *See* Doc. 140. As that deadline has already expired, the Court will not permit any more such motions to be filed that raise issues of law or fact that could reasonably have been raised on or before **NOVEMBER 8, 2017**, or that otherwise merely seek to relitigate issues on which the Court has already ruled in this case. Failure to comply with this requirement may result in the issuance of an order to show cause why sanctions should not be imposed, pursuant to Fed. R. Crim. P. 57(b). However, to the extent that any such motions *do* raise new issues of law or fact as described above, they may be filed not later than **FEBRUARY 21, 2018**. Any response to such a motion must be filed within ten (10) days after service of the motion.

(Doc. 248, p. 2) (emphasis in original). In a footnote to that excerpt, the Scheduling Order further explained that defenses, objections or requests "capable of determination without trial of the general issue . . . include, but are not limited to, those listed in Fed. R. Crim. P. 12(b)(3)," including "*severance under Fed. R. Crim. P. 14.*" *See id.* at n.1 (emphasis added). The overwhelming majority of arguments presented in Mr. Shelton's Motion for Severance and Memorandum in Support are arguments that are capable of determination without trial of the general issue that could easily have been raised not only prior to February 21, 2018, but even prior to November 8, 2017. Pursuant to this Court's

scheduling orders, Mr. Shelton has waived those arguments, and the Court will not consider them now.

The only argument Mr. Shelton raises that could not have been raised before February 21, 2018, is that the "recent arrest and detention" of an individual allegedly connected with Count Four "has been highly publicized" in "salacious" and "sensational" detail, including reporting about an "alleged murder-for-hire plot" in which that individual has been implicated. *See* Doc. 312, pp. 12–13. Mr. Shelton argues that such reporting will evoke an "emotional response" by the jury that "will be significant and will overshadow any attempt to separate Mr. Shelton and the evidence of activity charged in other counts." *See id.* at 13. Mr. Shelton does not appear to contend that any evidence will be introduced at trial regarding the alleged murder-for-hire plot; indeed, the likelihood of that happening is apparently so remote that Mr. Shelton has not even asked the Court to rule in limine that such evidence should be excluded.[3] Rather, Mr. Shelton's argument simply seems to be that the media attention that has been given to these facts is sufficient to overwhelm the issues pertaining to Mr. Shelton at trial. The Court disagrees, and believes a thorough and effective *voir dire* of potential jurors during jury selection will adequately mitigate any such risk. The Court will permit the parties to conduct a thorough *voir dire* in order to ensure that a jury is empaneled who will fairly and impartially decide the facts in this case. Therefore, Mr. Shelton's Motion for Severance will be **DENIED**.

[3] To be clear, by observing that Mr. Shelton has not sought a liminal ruling on the admissibility of such evidence, the Court is *not* saying that it believes such evidence would be admissible. If any party attempted to introduce such evidence, then obviously the Court would entertain and very seriously consider objections that, for example, are grounded on irrelevance or on the grounds that such evidence's probative value would be substantially outweighed by risk of unfair prejudice and confusing the issues.

## V. THE GOVERNMENT'S 404(b) NOTICE (Doc. 309)

On March 29, 2018, the Government filed a Notice that it intended to introduce certain evidence of other alleged wrongs by Mr. Woods, for the purpose of "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *See* Doc. 309, p. 2 (quoting Fed. R. Evid. 404(b)). The Government represented that it had acquired this evidence on the previous day, March 28, during an interview of a former Arkansas State Representative, who told the Government that Mr. Woods had previously invited him to join him in "receiv[ing] payments in cash for their help in obtaining grants for non-profits." *See id.* at 3.

Mr. Woods objects to this Notice on several grounds. First, Mr. Woods argues that the Notice is untimely, because "the new 404(b) information could have been easily obtained by the government at a much earlier date" since it knew this individual "was in the Arkansas Legislature at the same time as" Mr. Woods, and since this individual had voluntarily approached the Government. *See* Doc. 313, ¶ 14. The Court disagrees. The Government does not have an obligation to pursue every possible lead in its investigation, interview every former member of the Arkansas General Assembly who served with Mr. Woods, or stop its investigation as trial draws near, in order to comply with its notice obligations under Rule 404(b). That Rule, and this Court's scheduling orders, simply require the Government to give the Defendants "reasonable notice" of its intent to use 404(b) evidence. *See* Doc. 59, p. 3; Doc. 248, p. 2; *see also* Rule 404 Advisory Committee Note to 1991 Amendments ("Other than requiring pretrial notice, no specific time limits are stated in recognition that what constitutes a reasonable request or disclosure will depend largely on the circumstances of each case."). And although the

Court is presently not well-positioned to evaluate the significance of this evidence to the Government's case, *see United States v. Green*, 275 F.3d 694, 701 (8th Cir. 2001) (listing this as one of the "factors to consider in determining the reasonableness of the government's pretrial notice"), the Court does not believe that the Government has left the Defendants inadequate time to prepare for this evidence by giving them notice eleven days before a month-long trial is set to begin. Under these circumstances, the Court finds that providing notice to the Defendants one day after becoming aware of the 404(b) evidence is reasonable.

In addition to his arguments about timeliness of notice, Mr. Woods objects to this evidence on the grounds that it is irrelevant, that there is inadequate independent evidence to establish that this former legislator's testimony would be true, and that its probative value would be substantially outweighed by the danger of unfair prejudice. *See* Doc. 313, ¶¶ 17–20. These objections are all grounded in the Eighth Circuit's test for the admissibility of 404(b) evidence, which is that the evidence must be: (1) relevant to a material issue raised at trial; (2) similar in kind and close in time to the crime charged; (3) supported by sufficient evidence to support a jury finding that the event occurred; and (4) have probative value that is not substantially outweighed by its prejudicial effect. *United States v. Shoffner*, 634 F.3d 482, 486–87 (8th Cir. 2011). The Court will **DEFER RULING** at this time on this evidence's admissibility, because it cannot effectively evaluate this evidence's probative value or prejudicial effect without the benefit of context provided from the larger body of evidence at trial.

## VI. CONCLUSION

**IT IS THEREFORE ORDERED** that the Government's Second Motion in Limine (Doc. 302) is **GRANTED IN PART AND DENIED IN PART**, Mr. Shelton's Second Motion in Limine to Preclude the Government's Use of the Terms "Bribe," "Kickback," or Their Synonyms at Trial (Doc. 304) is **DENIED**, Mr. Shelton's Motion to Compel Disclosure of Evidence pursuant to *Brady* and the Sixth Amendment to the United States Constitution (Doc. 310) is **DENIED**, and Mr. Shelton's Motion for Severance of Defendants, or in the Alternative, Severance of Count Four of the Second Superseding Indictment (Doc. 311) is **DENIED**.

**IT IS FURTHER ORDERED** that no party may attempt to introduce evidence at trial concerning FBI Special Agent Robert Cessario's wiping of his laptop computer, or make any reference to that event in the presence of the jury, without having first obtained leave from the Court to do so. If, during trial, any party believes an adequate foundation has been laid to justify the introduction of such evidence, then it may seek leave from the Court to do so; but it must seek such permission outside the presence of the jury.

**IT IS SO ORDERED** on this 3rd day of April, 2018.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE