IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| V.   CASE NO. 5:17-CR-50010-3 | |
| RANDELL G. SHELTON, JR. | DEFENDANT |

**OPINION AND ORDER**

Currently before the Court are Defendant Randell G. Shelton, Jr.'s Motion to Set Aside the Forfeiture Order and Enter an Amended Forfeiture Order (Doc. 487) and Brief in Support (Doc. 492), as well as the Government's Response (Doc. 491). For the reasons given below, Mr. Shelton's Motion is **DENIED**.

### I. BACKGROUND

Mr. Shelton was convicted by a jury on twelve felony counts of honest services fraud for his role in a conspiracy to bribe his codefendant, former state senator Jon Woods. Essentially, the Government proved at trial that Mr. Shelton used his company, Paradigm Strategic Consulting, to funnel cash bribes to Mr. Woods from their codefendant Oren Paris. In exchange for these bribes, Mr. Woods used his office to steer public grant monies from the state's General Improvement Fund ("GIF") to Ecclesia College, an institution of which Mr. Paris was then president. The Government also introduced evidence at trial that Mr. Shelton funneled additional bribes from Mr. Paris to Mr. Woods in exchange for non-GIF legislative action that was favorable to Ecclesia. Mr. Shelton was acquitted on two counts pertaining to the non-GIF part of the scheme.

1

The jury returned its verdict on May 3, 2018. *See* Doc. 378. Later that same day, the Government presented the Court and Mr. Shelton with a proposed money judgment, pursuant to the forfeiture allegation in the Second Superseding Indictment. *See* Exhibit 1, p. 2. In the email to which the proposed money judgment was attached, the Government explained that "[t]he amount for Shelton represents the amount of GIF directed to Ecclesia and the payments made to Paradigm that were not paid in coordination with GIF." *Id.* The Government further explained in that email that although Mr. Shelton was acquitted on some non-GIF counts, "it is the government's position that they were part of the conspiracy" of which Mr. Shelton was convicted, "and that the government proved as much by a preponderance of the evidence, which is the burden of proof for forfeiture."[1] *See id.* All counsel for Mr. Shelton were copied on that email. Four months later, on September 4, the Government sent another email to the Court and all counsel for Mr. Shelton, renewing its request that a money judgment be entered against Mr. Shelton, and again attaching the proposed money judgment to the email. *See id.*

Two days later, on September 6, Mr. Shelton's sentencing hearing was held. This Court sentenced Mr. Shelton to 72 months of incarceration in the Federal Bureau of Prisons. At the conclusion of Mr. Shelton's sentencing hearing, the Court stated that it had been presented with a proposed money judgment in the amount of $664,000, and asked counsel for Mr. Shelton whether she had an opportunity to review the precedent. She stated that she had not. The Court then found, by a preponderance of the evidence presented at trial, that GIF grants totaling $621,500 were procured through bribes in

---

[1] This, of course, is a much lower burden of proof than that which applied to the criminal charges against Mr. Shelton, which was proof beyond a reasonable doubt.

furtherance of the conspiracy of which Mr. Shelton had been convicted, and that an additional $42,500 in payments were made to Paradigm Strategic Consulting in furtherance of that same conspiracy, totaling $664,000 in proceeds from Mr. Shelton's offenses of conviction. The Court signed the proposed money judgment in open court, but stated that it would not file the money judgment until such time as counsel for Mr. Shelton had an opportunity to review it. The Court informed counsel for Mr. Shelton that if her review suggested that there was some error, either legal or factual or clerical, then she should bring it to the Court's attention.

The next day, on Friday, September 7, the Court emailed all counsel for Mr. Shelton, with the Government copied and the Money Judgment attached, and asked Mr. Shelton's counsel to "[p]lease review and let the Court know at your earliest convenience if you have any objection to the Order being entered." *See id.* at 1. Later that same day, counsel for Mr. Shelton responded to the email, saying "[i]t will be Monday or Tuesday for our response if that is acceptable." *Id.* At the close of business on Tuesday, September 11, having received no objection from Mr. Shelton, the Court filed the Money Judgment, which is located on the docket at Doc. 476.

The following morning, on Wednesday, September 12, counsel for Mr. Shelton emailed the Court and the Government, stating that Mr. Shelton objected to the amount of money being forfeited, and contending that "the amount subject to forfeiture for Randell Shelton is, at most, the total amount he was paid by Ecclesia College." See Doc. 487-1, pp. 2–3. The Government, and then the Court, responded to the email with reminders to counsel for Mr. Shelton that the Money Judgment had already been filed on the previous

3

day.[2] *See id.* at 2. The Court instructed counsel for Mr. Shelton "to confer with the Government about the basis for the Government's request and the basis for your objections to it," and further stated that "[i]f after your conferral you believe you have legitimate grounds for filing a motion on the docket seeking relief, then feel free to do so." *See id.*

One week later, on September 19, counsel for Mr. Shelton emailed the Court, with the Government copied, to inform the Court that "the Government has agreed to submit an amended forfeiture order in the amount of $267,500, which represents the total proceeds Mr. Shelton received from Ecclesia College." *See* Doc. 487-2, p. 4. The Government confirmed that this was their agreement. *See id.* The Court then inquired as to what the legal basis was for the proposed amendment to the Money Judgment. *See id.* at 3. The next day, September 20, several rounds of elaboration by the Government and follow-up questions by the Court were exchanged. *See id.* at 1–3. At the end of it all, the Court stated that it remained "unpersuaded," but that "regardless of what the Court may ultimately conclude on closer examination, we need to make a formal record. Accordingly, if the Government and/or Mr. Shelton believe that the money judgment was

---

[2] In Mr. Shelton's Motion, he omits any reference to his counsel's prior email to the Court that provided a self-imposed deadline of "Tuesday" to object to the money judgment. *See* Doc. 487, p. 2. He simply states that the Court emailed a copy of the proposed order to the parties on September 7, that Mr. Shelton "notified the Court and the Government" of his objection on September 12, and that "[t]he Court subsequently informed Mr. Shelton the order had been entered the previous day." *See id.* In fact, Mr. Shelton was not "subsequently informed" of the Money Judgment's filing. Mr. Shelton's attorneys are registered users of this Court's electronic filing system, and they receive email notifications of all filings at the same instant the filings are made. And Mr. Shelton's objections to the Money Judgment were one day tardy of his own previously self-imposed deadline. Mr. Shelton's omission of these facts in his Motion could give an uninformed reader the false impression that the Court used arbitrary timing to file the Money Judgment in a secretive manner. These omissions by Mr. Shelton are not well-received.

4

entered in error, then please timely file a motion (joint or otherwise) seeking appropriate relief." *See id.* at 1.

Four days later (yesterday, September 24), Mr. Shelton filed his Motion to Set Aside the Forfeiture Order and Enter an Amended Forfeiture Order. *See* Doc. 487. The following day (today), the Government filed its Response, *see* Doc. 491, after which Mr. Shelton filed a belated Brief in Support of his Motion, *see* Doc. 492. Mr. Shelton's Motion is now ripe for decision.

## II. DISCUSSION

The forfeiture allegation and the Money Judgment against Mr. Shelton were filed pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). The former statute authorizes civil forfeiture to the United States of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of [various statutes,] or any offense constituting 'specified unlawful activity' (as defined in [another statute]), or a conspiracy to commit such offense." *See* 18 U.S.C. § 981(a)(1)(C). As for 28 U.S.C. § 2461(c), it provides a mechanism whereby the Government may obtain forfeiture of property in a criminal case, like this one, where civil forfeiture is authorized and "the defendant is convicted of the offense giving rise to the forfeiture." That statute further provides that, with one exception that does not apply here, "the procedures in section 413 of the Controlled Substances Act (21 U.S.C. 853) apply to all stages of a criminal forfeiture proceeding." *See* 28 U.S.C. § 2461(c).

In *Honeycutt v. United States*, the Supreme Court held that criminal forfeiture under 21 U.S.C. § 853(a)(1) "is limited to property the defendant himself actually acquired as the result of the crime." *See* 137 S. Ct. 1626, 1635 (2017). The Court based its

decision on that statute's "plain text," which "expressly limited forfeiture to tainted property that the defendant obtained." *See id.* at 1635 n.2. In reaching that conclusion, the Supreme Court relied heavily on the fact that 21 U.S.C. § 853(a)'s definition of property subject to forfeiture explicitly restricts itself to "proceeds the person obtained" from the violation, "any of the person's property" that was used to facilitate the violation, and the person's "interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise." *See Honeycutt*, 137 S. Ct. at 1632–33. The Supreme Court also reasoned that to hold otherwise would be "contrary to" or otherwise "render futile" several other subsections of 21 U.S.C. § 853 which either explicitly reference § 853(a), *see* 21 U.S.C. §§ 853(c) ("Third party transfers") and (e) ("Protective orders"), or else implicitly depend on its limitation of forfeitable property to that which the defendant actually acquired from the crime, *see* 21 U.S.C. §§ 853(d) ("Rebuttable presumption") and (p) ("Forfeiture of substitute property"). *See* 137 S. Ct. at 1633–34. The Supreme Court rejected the Government's contention that Congress should "be presumed to have legislated against the background principles of conspiracy liability" under which "conspirators are legally responsible for each other's foreseeable actions in furtherance of their common plan," *see id.* at 1634 (citing, *inter alia*, *Pinkerton v. United States*, 328 U.S. 640 (1946)), concluding that "[t]he plain text and structure of § 853 leave no doubt that Congress did not incorporate those background principles," *id.*

Mr. Shelton acknowledges, of course, that the money judgment in the instant case was obtained pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)—and not under 21 U.S.C. § 853, which was the statute at issue in *Honeycutt*. Nevertheless, he and the Government both now contend that the reasoning of *Honeycutt* should apply with

full force to the instant case, because 28 U.S.C. § 2461(c) states that "[t]he procedures in" 21 U.S.C. § 853 "apply to all stages of a criminal forfeiture proceeding" (except for 21 U.S.C. § 853(d)).

In the year since Honeycutt came down, a circuit split has already developed on the question of whether Honeycutt applies to criminal forfeitures under 18 U.S.C. § 981(a)(1)(C). This Court is aware of two circuits that have held it does, see *United States v. Gjeli*, 867 F.3d 418 (3d Cir. 2017); *United States v. Carlyle*, 712 Fed. Appx. 862 (11th Cir. 2017), and one circuit that has held it does not, see *United States v. Sexton*, 894 F.3d 787 (6th Cir 2018). The Eighth Circuit does not appear to have weighed in on the matter yet. In *Gjeli*, the Third Circuit stated, with no further analysis, that "a review of the text and structure" of 18 U.S.C. § 981(a)(1)(C) "reveals that" it is "substantially the same as the one under consideration in *Honeycutt*." See 867 F.3d at 427. And in *Carlyle*, the Eleventh Circuit made the similarly unadorned observation that "the two statutes are largely the same in terms of their pertinent language." See 712 Fed. Appx. at 864. However, in *Sexton*, the Sixth Circuit held that *Gjeli* and *Carlyle* "were incorrect" in those assertions, because "[u]nlike § 853(a)(1), 18 U.S.C. § 981(a)(1)(C) does not contain the phrase 'the person obtained,' which was the linchpin of the Supreme Court's decision in *Honeycutt*." See 894 F.3d at 799. Therefore, the Sixth Circuit concluded that for property to be subject to criminal forfeiture under 18 U.S.C. § 981(a)(1)(C), it "must be connected, or 'traceable,' to the crime," but "does not need to be property that the particular defendant received. As long as the property is connected to the crime, a defendant can be liable for property that his codefendant acquired." *See id.*

7

This Court believes this is a very close and difficult issue, as evidenced not only by the circuit split but also by the Government's reversal of its own position in the instant case. On the one hand, this Court wholeheartedly agrees with the *Sexton* Court that the *Gjeli* and *Carlyle* Courts overlooked a critical difference between the two statutes' respective definitions of property subject to forfeiture. The *Sexton* Court is correct that 21 U.S.C. § 853(a) contains text explicitly limiting its scope to property of the person who committed the crime and that 18 U.S.C. § 981(a)(1)(C) does not. But on the other hand, Mr. Shelton and the Government are also correct that 28 U.S.C. § 2461(c) explicitly incorporates "[t]he procedures in" 21 U.S.C. § 853. And it is also true that the Supreme Court did not base its holding in *Honeycutt* exclusively on 21 U.S.C. § 853(a)'s definitional language, but also looked to the "structure" of that statute as revealed in other subsections—some of which are clearly procedural in nature.

However, this Court ultimately agrees with the *Sexton* Court that 21 U.S.C. § 853(a)'s limiting definitional language was the "linchpin" of the *Honeycutt* decision. Put differently, this Court believes the Supreme Court would have reached the same result in *Honeycutt* even if it had never analyzed the broader structure of the statute, and that therefore that portion of its analysis may well be *dicta*, though this Court certainly acknowledges that this is a debatable point. Furthermore, this Court does not believe that 21 U.S.C. § 853(a)'s definition of property subject to forfeiture is "procedural" in nature; rather, it is simply definitional, and thus not incorporated by 28 U.S.C. § 2461(c). Therefore this Court concludes, with acknowledgment that reasonable minds can differ, that the stronger argument holds that *Honeycutt* does not apply to the instant matter—notwithstanding the fact that both Mr. Shelton and the Government contend otherwise.

## III. CONCLUSION

The Court has already found, by a preponderance of the evidence presented at trial, that the proceeds of Mr. Shelton's offenses of conviction total $664,000. The Court continues to believe that factual finding is correct, regardless of *Honeycutt*'s applicability. The Court has already entered the Money Judgment against Mr. Shelton on that factual basis. And for the reasons given above, the Court does not believe there is a legal basis for vacating or amending that Money Judgment. **IT IS THEREFORE ORDERED** that Defendant Randell G. Shelton, Jr.'s Motion to Set Aside the Forfeiture Order and Enter an Amended Forfeiture Order (Doc. 487) is **DENIED**.

**IT IS SO ORDERED** on this 25th day of September, 2018.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE